LEE, P.J.,
Dissenting:
¶ 17. With respect to the majority, I must dissent. After reviewing the record, I cannot conclude that Sanders was guilty of aggravated assault beyond a reasonable doubt.
¶ 18. Count I of the indictment reads as follows:
That KELVIN LAMAR SANDERS on or about [the] 26th Day of April, 2004, in Washington County, did unlawfully, wilfully and feloniously cause or attempt to cause bodily harm to Prentiss McDowell by ramming his vehicle with a deadly weapon, to-wit: a pickup truck.
¶ 19. The State cites various cases for the proposition that “intent to do an act or commit a crime is also a question of fact to be gleaned by the jury from the facts shown in each case.” Shanklin v. State, 290 So.2d 625, 627 (Miss.1974). Shanklin further states, “[t]he intent to commit a crime or to do an act by a free agent can be determined only by the act itself, surrounding circumstances, and expressions made by the actor with reference to his intent.” Id. However, none of the cases cited by the State are directly on point. Rather, those rulings reflect ample testimony for the jury to reasonably infer intent from the defendant’s actions. In Shanklin, the supreme court found that there was ample testimony to show the defendant used an iron pipe as a deadly weapon with intent to kill the victim. Id. In Newbum v. State, 205 So.2d 260, 265 (Miss.1967), the defendant was convicted of burglary with the intent of committing the crime of violating a child. The supreme court found that there was sufficient evidence that the defendant broke into a home in order to violate a young girl. Id.
¶ 20. In Knox v. State, 805 So.2d 527 (Miss.2002), Knox was convicted of capital murder and, on appeal, argued that there was no evidence he intended to commit the underlying felony of robbery when he killed the victim. However, the supreme court found that there was sufficient evidence to show intent where the victim’s car keys and house keys were found in Knox’s possession, especially since the victim’s body was found in the trunk of her car. Id. at 581-32 (¶¶ 14-15). Finally, in Chambliss v. State, 919 So.2d 30 (Miss. 2005), the supreme court found ample evidence that Chambliss intended to commit aggravated assault upon the victim. In Chambliss, witnesses testified as to the actual assault as well as Chambliss’s erratic behavior leading up to the assault. Id. at 35 (¶¶ 14-15).
¶ 21. The majority cites to Blocker v. State, 809 So.2d 640, 645(¶ 18) (Miss.2002), for the proposition that even “slim” evidence can uphold a guilty verdict if it can be reasonably inferred to support the finding. However, the evidence in Blocker was “less slim” than the evidence in the case sub judice as Blocker’s accomplice implicated her in the shooting and an eyewitness was able to give a description of Blocker as the shooter.
¶ 22. Upon review of the record, I do not agree with the majority’s discussion of the evidence. Any “evidence” pointing to Sanders intentionally causing an accident to rob McDowell is purely speculation. Although the majority points out that McDowell testified on direct examination he had “no doubt at all” that Sanders rammed his vehicle at four o’clock in the morning and that he saw the vehicle come out of a vacant lot to ram him, McDowell testified on cross-examination that he never saw the truck in the vacant lot prior to the *99 accident. McDowell admitted that he was disoriented at the time of the accident. Furthermore, McDowell testified that he never saw the person driving the vehicle and, that the first time he saw Sanders, Sanders was standing near a white Honda approximately two blocks from where the accident occurred. McDowell stated that he only noticed Sanders because Willie Lee Byars pointed him out to Sanders. Byars supposedly witnessed the accident, but Byars never testified.
1123. It is apparent that the jury found Sanders guilty of aggravated assault from a statement made by a law enforcement official which did not accurately reflect the circumstances. Officer Litton, who responded to the scene, testified that she thought Sanders had intentionally rammed McDowell, even though Sanders contacted Officer Litton and told her he was involved in the wreck, but the wreck was an accident. At most the evidence establishes that Sanders was only guilty of leaving the scene of an accident.
¶24. It is clear that McDowell, after being robbed, assumed that Sanders had hit his vehicle intentionally in order to rob him, regardless of the fact that he did not see Sanders driving the car or fleeing the scene. The majority is attempting to make this assumption a fact to create sufficient evidence to convict Sanders of aggravated assault. In fact, the record shows that the State was more concerned with proving the elements of armed robbery than aggravated assault. Surprisingly, the jury did not find Sanders guilty of armed robbery even though there was more than sufficient evidence for the jury to find him guilty of that charge. However, I cannot find that there was sufficient evidence for the jury to find beyond a reasonable doubt that Sanders intentionally struck McDowell’s vehicle with his own. Thus, I would reverse and render.
KING, C.J., CHANDLER AND ISHEE, JJ., JOIN THIS OPINION.